**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcus A. Shivers, ) | No. CV 06-1914-PHX-MHM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Jo Anne Barnhart, Commissioner of the ) | |
| Social Security Administration ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Marcus A. Shivers ("Plaintiff") seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying his claim for disability insurance benefits. 42 U.S.C. § 405(g).

**I. Procedural History**

Plaintiff filed an application for Disability Insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act in August of 2003 (Tr. 69-71, 257-60). See 42 U.S.C. §§ 405(g), 1383(c). The application was denied initially and upon reconsideration. On October 13, 2005, a hearing was held in front of an Administrative Law Judge ("ALJ"). (Tr. 280-324). On March 6, 2006, the ALJ issued a decision denying Plaintiff's applications. (Tr. 15-24). Plaintiff sought review of the ALJ's decision, and submitted additional evidence. (Tr. 12, 271-79). On June 19, 2006, the Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision. (Tr. 6-9).

On August 3, 2006, Plaintiff filed a Complaint against Defendant seeking review of the ALJ's denial of his social security benefits. (Doc. 1). On October 10, 2006, Defendant submitted an answer to Plaintiff's Complaint. (Doc. 7). Plaintiff then filed a Motion for Summary Judgment, and a Memorandum in Support of the Motion for Summary Judgment, on January 10, 2007. (Docs. 13, 15). In his Motion, Plaintiff contends that the ALJ erred by rejecting the treating physician's assessment and adopting the opinion of the non-examining physician. Plaintiff also asserts that the ALJ erred by rejecting Plaintiff's credibility as to his symptom testimony. Defendant then filed a Response to the Motion for Summary Judgement (Doc. 17), a Cross-Motion for Summary Judgment (Doc. 18), and a Memorandum in Support of the Cross-Motion for Summary Judgment (Doc. 20) on February 9, 2007. Defendant asserts that the ALJ was within his authority in discounting Plaintiff's treating doctor's opinion in favor of the non-treating physician's assessment and in rejecting or discounting Plaintiff's testimony regarding his symptoms. Plaintiff then filed a Response to Defendant's Cross-Motion for Summary Judgment on February 27, 2007. (Doc. 21).

## II. Background Facts

### A.     Plaintiff's Medical History

Plaintiff asserts that he became disabled and unable to work due to the onset of injuries on May 24, 2003. (Tr. 69, 79). Plaintiff contends that he suffers from degenerative disc disease, back pain, muscle spasms, and bulging discs. (Tr. 79).

In February 2003, Plaintiff was examined by Glen Bair, M.D., who noted that Plaintiff suffered from back pain as a result from playing basketball. (Tr. 117, 120, 122). Dr. Bair also observed that Plaintiff had trouble squatting, bending forward, and stretching on his left side. (Tr. 117). Dr. Bair examined an old magnetic resonance imaging ("MRI") scan that showed an abnormal disc. (Id.). A new MRI showed that the abnormal disc had resolved with "only minimal prominence." (Tr. 111-13, 115). Dr. Bair prescribed anti-inflammatory medication for theses ailments and also recommended that Plaintiff exercise and participate in body mechanics. (Tr. 115).

On November 19, 2003, Plaintiff was examined by consulting examiner Malcolm McPhee, M.D. Dr. McPhee observed that Plaintiff was able to walk on his heels and toes, bend forward to touch his toes, and extend his back. (Tr. 123). Dr. McPhee determined that Plaintiff could lift fifty pounds occasionally and twenty-five frequently; and sit, stand, and walk for about six hours of an eight-hour workday. (Tr. 124). Dr. McPhee also concluded that Plaintiff had the ability to occasionally climb, balance, stoop, kneel, crouch, and crawl. (Id.).

Plaintiff was first seen by his treating physician, Abraham Kuruvilla, M.D., on November 26, 2003. (Tr. 142). Dr. Kuruvilla assessed that Plaintiff was unable to sit straight, walk on his heels, and squat and observed that Plaintiff was taking the medications Flexeril and Naproxen for these bodily complaints. (Tr. 140). Dr. Kuruvilla examined Plaintiff again in December 2003 and referred him for physical therapy and prescribed Baclofen and Naprosyn. (Tr. 135). After his first session of physical therapy, Plaintiff reported a decrease in pain. (Tr. 148).

In December 2003, Plaintiff's medical reports were examined by Fernando Gonzales-Portillo, M.D., who concluded that Plaintiff could lift and carry twenty pounds occasionally, and ten pounds frequently; and both sit and stand and/or walk for six hours in an eight-hour workday. (Tr. 29, 31, 128). Dr. Gonzales-Portillo also assessed that Plaintiff was capable of occasional climbing (except for ladders, ropes, and scaffolds), balancing, stooping, kneeling, crouching and crawling. (Tr. 129).

On February 2, 2004, Dr. Kuruvilla diagnosed Plaintiff with degenerative spine disease and referred Plaintiff for a new MRI scan. (Tr. 227-28, 229). On April 13, 2004, Dr. Kuruvilla reviewed the results and noted "[d]esiccated and narrowed disc spaces," disc extrusion and "[m]oderate size disc buldges." (Tr. 227-28). On April 28, 2004, Dr. Kuruvilla noted that the treatment with physiotherapy, muscle relaxants and anti-inflammatories had helped reduce Plaintiff's pain level. (Tr. 224). On May 18, 2004, Dr. Kuruvilla noted that Plaintiff's physical therapy had helped "immensely" and ordered another series of eight sessions. (Tr. 223).

On April 19, 2004, Frank Shallenberger, M.D., reviewed Plaintiff's medical records at the request of the state agency. (Tr. 154-161). Dr. Shallenberger agreed with Dr. Gonzales-Portillo, and assessed that Plaintiff could lift and carry twenty pounds occasionally, and ten pounds frequently; could both sit and stand and/or walk for six hours in an eight-hour workday, and climb (except for ladders, ropes, and scaffolds), balance, stoop, kneel and crawl occasionally. (Tr. 155-56).

On October 1, 2004, Plaintiff's back pain recurred and Dr. Kuruvilla prescribed different medications for the discomfort because Plaintiff was allergic to the initially prescribed medicines. (Tr. 211). In May 2005, Plaintiff was prescribed Tylenol with codeine and was referred to pain management. (Tr. 206). On September 2, 2005, Dr. Kuruvilla reported that Plaintiff could lift and carry twenty pounds occasionally and frequently; stand or walk for a at least two hours in an eight-hour workday; sit for less than six hours in an eight-hour work day; and should alternate sitting and standing every hour. (Tr. 240-241).

On October 6, 2005, on Dr. Kuruvilla's referral, Christopher Huston, M.D. examined Plaintiff. (Tr. 243-46). Plaintiff told Dr. Huston that physical therapy, home exercise, massage, acupuncture, and steroid injections provided no relief from pain. (Tr. 244-45). Dr. Huston's examination showed that Plaintiff's back range of motion was limited and Dr. Huston directed another MRI exam be taken. (Tr. 244). The results of the MRI produced after the ALJ's decision but before the Appeals Council's affirmance indicated "[d]egenerative disc signal changes . . . at L3-4 through L5-SI." (Tr.278-79).

### B.  Hearing Testimony

On October 13, 2005, a hearing was held to determine Plaintiff's disability status. (Tr. 280-324). At the hearing, a non-examining physician, Vincent Russo, M.D., testified as to Plaintiff's aliments and abilities. (Tr. 285-294). Dr. Russo stated that Plaintiff suffered from "chronic back condition with pain, chronic pain, and...degenerative disk disease in the lumbar region with radiculitis." (Tr. 286). Dr. Russo also believed that Plaintiff could lift and/or carry thirty-five pounds occasionally and ten pounds frequently; sit or stand and/or walk for

- 4 -

1 thirty minute increments, for four hours each in an eight-hour workday and should have a
2 sit/stand option. (Tr. 288). It was also Dr. Russo's opinion that Plaintiff should avoid
3 "excess bending, stooping, and crawling, climbing, or squatting." (Tr. 288). Dr. Russo also
4 testified that Plaintiff was taking medications that could "affect his performance" but that
5 ultimately Plaintiff "could work at a regular job." (Tr. 292).

6 Plaintiff also testified at the hearing and asserted that he endured extreme back pain and
7 was, therefore, unable to work. (Tr. 295-96). In addition to testifying to his daily activities,
8 Plaintiff described his pain as an "intense burning and cramping pain" that was "constant."
9 (Tr. 296). Plaintiff also testified that he is forced to lie down about four hours of an eight-
10 hour day because of the pain. (Tr. 297). Plaintiff further described that the pain sometimes
11 goes down to his legs and can cause a "numbing feeling." (Tr.299).

12 Vocational expert, Mark Kelman, was also called on to give testimony at the hearing.
13 (Tr. 314-23). Mr. Kelman responded to a series of hypothetical questions asked by the ALJ.
14 (Tr. 317-320). For instance, the ALJ identified a hypothetical individual who was capable
15 of lifting twenty pounds occasionally and carrying ten pounds on a regular basis. (Tr. 317).
16 The hypothetical person was also able to stand and walk for six hours a day in an eight-hour
17 workday with the ability to stand up and move around on an hourly basis and had to avoid
18 excessive bending, crawling, stooping, climbing, and squatting (317-18). Mr. Kelman stated
19 that such a person would be able to work as a lot attendant, a youth counselor, a gate guard,
20 or a cashier. (Tr. 320). In addition, the ALJ asked Mr. Kelman to impose the limitations
21 found by Dr. Russo and whether such limitations would allow for work. Mr. Kelman
22 determined that such a person could perform work as a lot attendant, youth counselor, gate
23 guard and cashier. (Tr. 320-21). When asked by Plaintiff's counsel if an individual could
24 work with the limitations described by Plaintiff in his testimony, Mr. Kelman testified that
25 no work would be available. (Tr. 321).

26 **C.     ALJ's Conclusion**

27 On March 6, 2006, the ALJ denied Plaintiff's claim for disability insurance benefits and
28 Supplemental Security Income following the five step sequential analysis. (Tr. 18-24). At

- 5 -

step one, the ALJ found that Plaintiff had not performed substantial activity since his alleged onset date of May 24, 2003. (Tr. 19). At step two, the ALJ concluded that Plaintiff suffered from degenerative disc disease of the lumbar spine, which constituted a severe impairment within the meaning of the Social Security Act. (Tr. 20). At step three, the ALJ found this impairment was not severe enough to meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Id.). At step four, the ALJ determined that Plaintiff possessed the residual functional capacity to perform less than the full range of light work and requires a sit/stand option. (Tr. 22). The ALJ concluded that Plaintiff had the residual functional capacity to lift and/or carry 35 pounds occasionally and 10 pounds frequently and stand/walk and sit for 30 minutes at a time for four hours each in an eight hour day while needing to avoid excessive bending, crawling, stooping, climbing and squatting. (Tr.22). The ALJ determined that Plaintiff was, therefore, capable of work he had done in the past as a lot attendant and youth counselor (Id.). In making his determination, the ALJ found that Plaintiff's impairments were "less serious than he has alleged" and that Plaintiff's allegations were not fully credible. (Tr. 20, 22.). The ALJ determined that Plaintiff, was therefore, not disabled. (Tr. 24).

## III. Standard of Review

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

(1) determine whether the applicant is engaged in "substantial gainful activity;"

(2) determine whether the applicant has a "medically severe impairment or combination of impairments;"

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-141 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)).

The ALJ's findings are considered legitimate if they are supported by substantial evidence. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court considers the record as a whole when determining whether substantial evidence supports a decision. Id  Where evidence is inconclusive or "susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

**IV. Discussion**

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by rejecting the assessment of Plaintiff's treating physician, Dr. Kuruvilla, in favor of the opinion of the non-examining physician, Dr. Russo and (2) whether the ALJ erred by rejecting Plaintiff's credibility as to the severity of his symptoms.

**A.    ALJ's Rejection of Dr. Kuruvilla's Assessment and the Adoption of Dr. Russo's Opinion.**

In finding the Plaintiff not disabled within the meaning of the Social Security Act, the ALJ significantly discounted the opinions and findings of Plaintiff's treating physician, Dr. Kuruvilla. For instance, in summarizing Dr. Kuruvilla's findings regarding Plaintiff's limitations, the ALJ stated that "[w]hile the undersigned does not totally discount the opinion of Dr. Kuruvilla, with very few exceptions, there are minimal objective findings found in his records, and in the overall medical evidence of record, to support all of his conclusions." (Tr. 21). The ALJ then went on to rely primarily on the medical findings and opinions of the non-examining physician, Dr. Russo, who offered testimony at the hearing. Specifically, the ALJ stated that "[t]he testimony of the medical expert is persuasive and accepted by the

- 7 -

1  undersigned . . . While Dr. Russo is not an examining physician, he is well qualified in his
2  field of expertise, and his opinion is based upon a comprehensive review of the medical
3  record . . . [and] his opinion is supported by the evidence of record overall." (Tr. 22).

4  Plaintiff contends that the ALJ's decision and explanation in rejecting the opinion of
5  Plaintiff's treating physician, Dr. Kuruvilla, violates well established Ninth Circuit precedent
6  based upon the high standards and deference afforded to the findings of a treating physician.
7  Plaintiff asserts that the ALJ's heavy reliance on the opinion of Dr. Russo, a non-examining
8  physician, in the face of Dr. Kuruvilla's findings without sufficient explanation demonstrates
9  the ALJ's non-compliance with Ninth Circuit law.  In opposition, the Commissioner asserts
10 that the ALJ's findings are supported by the requisite "substantial evidence" and the bases
11 for accepting the testimony and findings of Dr. Russo are sound.

12 "[A] treating physician's opinion is generally afforded the greatest weight in disability
13 cases; [however], it is not binding on an ALJ with respect to the existence of an impairment
14 or the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
15 Cir.2001). "The ALJ may disregard the treating physician's opinion whether or not that
16 opinion is contradicted." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).   When
17 presented with conflicting medical opinions, the ALJ must determine credibility and resolve
18 the conflict. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). In the case of a
19 conflict, the ALJ must give specific and legitimate reasons for disregarding the opinion of
20 the treating physician "based on substantial evidence in the record."  Id. (citation omitted).
21 "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts
22 and conflicting clinical evidence, stating his interpretation thereof, and making findings."
23 Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (quoting Cotton v. Bowen, 799 F.2d
24 1403, 1408 (9th Cir. 1986). Thus, the question before the Court is whether the ALJ properly
25 considered and disregarded Dr. Kuruvilla's findings as to Plaintiff's condition.

26 In reviewing the ALJ's decision, the Court is troubled by the lack of explanation
27 accompanying the ALJ's rejection of Dr. Kuruvilla's findings.  The main reason provided
28 by the ALJ in discounting Dr. Kuruvilla's findings based upon his treatment of Plaintiff was

- 8 -

1  that "there are minimal objective findings found in his records, and in the overall medical
2  evidence of record, to support all of his conclusions. (exhibits 6F and 11F)." (Tr.21).  The
3  ALJ's citation to the overall medical records generated by Dr. Kuruvilla (exhibits 6F and
4  11F) is not of meaningful assistance to determine whether the ALJ complied with his
5  obligation.  At a minimum, the ALJ was required to expressly identify the medical records
6  that would be inconsistent with the finding of Dr. Kuruvilla.  Presumably, the ALJ's citation
7  to Dr. Kuruvilla's overall records is for the purpose of demonstrating that the Plaintiff
8  appears to have experienced temporary episodes of improvement with the pain level
9  associated with his back pain.  However, without specific identification, the Court is left to
10 speculate, which is not acceptable under Ninth Circuit law.  See Embrey v. Bowen, 849 F.2d
11 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient
12 objective findings . . . does not achieve the level of specificity our prior cases have
13 required.").

14    In addition, while the ALJ relied primarily upon the opinion of Dr. Russo, the non-
15 examining testifying physician, the ALJ again failed to properly explain his rationale for
16 rejecting the findings of Dr. Kuruvilla in favor of those of Dr. Russo.  As noted above, the
17 ALJ simply noted that the Dr. Russo's findings were "persuasive and accepted by the [ALJ]
18 . . . and his opinion is based upon a comprehensive review of the medical record. . . . [and]
19 the evidence in the medical record overall."  (Tr. 22).  Such a brief and conclusory
20 explanation is not acceptable under Ninth Circuit law which requires the ALJ to provide a
21 "detailed and thorough summary of the facts and conflicting clinical evidence, stating his
22 interpretation thereof, and making findings." Thomas 278 F.3d at 957; see also Reddick v.
23 Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his
24 conclusions[;] [h]e must set forth his own interpretations and explain why they, rather than
25 the doctors', are correct.").  Here, instead of providing a thorough summary of the conflicting
26 medical evidence, the ALJ broadly accepted the findings of Dr. Russo with little explanation.
27 Also, the Commissioner's explanation supporting the ALJ's findings misses the mark.  The
28 Commissioner contends that the ALJ's decision is sound as Dr. Kuruvilla's opinion

1 conflicted with other examining and non-examining physicians findings based upon their
2 examination or review of Plaintiff's condition. (Commissioner's Cross-Motion, p.4).
3 According to the Commissioner, four doctors offered opinions or findings contrary to those
4 rendered by Dr. Kuruvilla. However, other than a brief reference to a comparison of the
5 residual functional exam performed by Dr. McPhee with the ALJ's determination and a prior
6 citation to the records of Dr. Huston, the ALJ's decision is absent of any meaningful
7 discussion of these other physicians findings to controvert those of Dr. Kuruvilla.[1] As such,
8 these other opinions, not addressed by the ALJ in rejecting the findings of Dr. Kuruvilla,
9 cannot somehow save the ALJ's conclusory analysis.

10 In sum, the Court finds that the ALJ has failed to comply with his obligation in rejecting
11 or discounting the findings or opinion of Plaintiff's treating physician, Dr. Kuruvilla. The
12 ALJ's conclusory and broad rejection of Dr. Kuruvilla's findings runs contrary to Ninth
13 Circuit law.

**B.     ALJ's Rejection of Plaintiff's Credibility**

15 Plaintiff also contends that the ALJ erred in rejecting or discounting Plaintiff's symptom
16 testimony regarding Plaintiff's subjective symptoms resulting from Plaintiff's condition. In
17 opposition, the Commissioner contends that the ALJ adequately addressed Plaintiff's
18 symptoms as well as provided sufficient reasoning in discounting such testimony.

19 "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological,
20 or psychological abnormalit[y]' may provide the basis for determining that a claimant is
21 disabled." Light v. Soc. Sec. Admin, 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C.
22 § 423(d)(5)(A)). In deciding whether to accept a claimant's subjective symptom testimony,
23 the ALJ must perform a two-step analysis. First, a claimant who alleges disability based on
24 subjective symptom "must produce objective medical evidence of an underlying impairment
25 which would reasonably be expected to produce the pain or other symptoms alleged. Smoler

---

[1] The ALJ's decision is absent of any mention of the medical findings of Drs. Gonzales-Portillo and Shallenberger and a review of the ALJ's decision reveals that he relied primarily on the findings of Dr. Russo. (Tr.22).

- 10 -

1 v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing Cotton, 799 F.2d at 1407-08).  Once
2 the claimant produces such evidence "and there is no affirmative evidence of malingering,
3 the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if
4 [the ALJ] makes specific findings stating clear and convincing for doing so." Id. at 1284.
5 "The evidence upon which the ALJ relies must be substantial." Holohan v. Massanari, 246
6 F.3d 1195, 1208 (9th Cir. 2001).   In addition, "[t]he ALJ must state specifically which
7 symptom testimony is not credible and what facts in the record lead to that conclusion."
8 Smolen, 80 F.3d at 1284.  This is the case because "general findings are an insufficient basis
9 to support an adverse credibility determination." Holohan, 246 F.3d at 1208.  In this case,
10 the Plaintiff provided objective medical evidence of medical conditions that would
11 reasonably be expected to produce pain; *i.e.*, degenerative disc disease.  In addition, there is
12 no suggestion of malingering; thus to properly reject or discount Plaintiff's testimony, the
13 ALJ was obligated to cite clear and convincing evidence with facts in the record to support
14 such a conclusion.

15 In rejecting or discounting Plaintiff's credibility regarding his symptom testimony, the
16 ALJ concluded that "the allegations of the claimant are not fully credible with regard to the
17 severity and extent of his limitations since they are not supported by the evidence of the
18 record."  (Tr. 22).  However, the ALJ did not provide clear and convincing reasons that are
19 supported by the record in rejecting Plaintiff's credibility. Within the context of discounting
20 Plaintiff's testimony, the only specific reference by the ALJ is to the Plaintiff's testimony
21 regarding side effects from the medication he was taking.  The ALJ noted that "the medical
22 record discloses the claimant has not reported these side effects to any treating or examining
23 source." (Tr. 21).  However, even though such side effects may not have been disclosed, it
24 is important to note that Dr. Russo, the non-examining physician upon whom the ALJ
25 primarily relied, recognized the side effects.   Dr. Russo stated that "obviously, these drugs
26 are going to have an effect on his alertness, . . . and, perhaps, to perform his job . . . [s]o I
27 don't deny the fact that these are pretty powerful drugs and they're going to affect his
28 performance." (Tr. 292).  Thus, considering that Dr. Russo recognized such side effects it

1    appears inconsistent for the ALJ to discount Plaintiff's testimony on this basis. In addition,
2    the Court finds unpersuasive the Commissioner's citation to the numerous factors that the
3    ALJ can consider when evaluating the credibility of a claimant. (Commissioner's Response,
4    p. 6); See Bunnell, 947 F.2d at 346-47 (noting such factors to include the nature, duration,
5    location, onset, intensity of pain, functional restrictions and claimant's daily activities.).
6    While these are relevant factors that the ALJ can and should consider, the record before the
7    Court is generally absent of any indication that the ALJ invoked such factors when
8    discounting Plaintiff's symptom testimony.   Lastly, the Commissioner cites the ALJ's
9    discussion of Plaintiff's improved condition resulting from physical therapy as evidenced by
10   certain medical records to support the ALJ's conclusion. (Tr.21).   However, this Court
11   cannot find that such citations support a clear and convincing basis to discount the Plaintiff's
12   credibility. Notably, while the record does reflect some improvement with the pain level it
13   does not reveal that Plaintiff's pain was resolved by the treatment. (Tr.211). In addition, and
14   more importantly, the record as a whole fails to identify with the requisite specificity the
15   portions of Plaintiff testimony that are not credible combined with the clear and convincing
16   reasons in rejecting such testimony. In the absence of such an explanation, the Court cannot
17   find that the ALJ complied with his obligation.

18   **V. Conclusion**

19       In Connett v. Barnhart, the Ninth Circuit set forth that an award of benefits is
20   discretionary where the reasons for the ALJ's denial are legally insufficient. 340 F. 3d 871,
21   876 (9th Cir. 2003).. If the court determines that there are specific findings still to be made
22   than a remand is appropriate. Id. The circumstances that justify a remand with an entry of
23   an award rather than simply a remand for further proceedings exist if: (1) the ALJ failed to
24   provide legally sufficient reasons for rejecting the evidence, (2) there are no outstanding
25   issues to be resolved before determination of disability can be made, and (3) if it is clear from
26   the record that ALJ is required to find claimant disabled were such evidence credited.
27   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see also Moisa v. Barnhart, 367 F.3d
28   882, 886 (9th Cir. 2004). Where this test is met, the relevant testimony will be established

1  to be true and a remand for benefits is proper. Id.; see also Widmark v. Barnhart, 454 F.3d
2  1063, 1069 (9th Cir. 2006) (crediting as true "as a matter of law" the opinion of examining
3  physician where ALJ failed to provide adequate reasons for rejecting the opinion).
4  　In the instant case, the Court finds that circumstances in this case justify a remand with
5  an award of benefits. This determination is supported by the Court's determination that the
6  ALJ failed to give the requisite specific and legitimate reasons for rejecting the testimony of
7  Plaintiff's treating physician, Dr. Kuruvilla, as well as the requisite clear and convincing
8  reasons for rejecting Plaintiff's symptom testimony. In crediting such testimony as true, it
9  is clear to the Court that the Plaintiff would qualify as disabled within the meaning of the
10  Social Security Act. For instance, the vocational expert, Mr. Kelman, acknowledged that
11  Plaintiff would not be able to perform work if his limitations were accepted as true. (Tr.321).
12  Thus, there do not appear to be any further issues to be resolved before a finding of disability
13  is made.

14  　**Accordingly,**
15  　**IT IS HEREBY ORDERED** granting Plaintiff's Motion for summary judgment. (Doc.
16  13).
17  　**IT IS HEREBY ORDERED** denying Defendant's Motion for Summary Judgment.
18  (Doc. 18).
19  　**IT IS FURTHER ORDERED** remanding this matter to the Commission of Social
20  Security for an award of benefits.
21  　DATED this 24th day of September, 2007.

_____
Mary H. Murguia
United States District Judge